Charles L. PLEASANT, Respondent,

v.

**MISSOURI STATE HIGHWAY PATROL, Appellant.**

No. WD 65481.

Missouri Court of Appeals, Western District.

Jan. 10, 2006.

Theodore A. Bruce, Jefferson City, MO, for appellant.

Timothy W. Van Ronzelen and Thomas G. Pirmantgen, Co-counsel, Jefferson City, MO, for respondent.

Before HAROLD L. LOWENSTEIN, P.J., JOSEPH M. ELLIS, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. Charles Pleasant, who was terminated from his employment with the Missouri State Highway Patrol (MSHP), appealed his disciplinary action to the Cole County Circuit Court, which reversed and ordered the MSHP to rescind the discipline, remove mention of the discipline from Mr. Pleasant's personnel file, and return any salary withheld. The issue on appeal is whether Mr. Pleasant's failure to report a statement made by a police officer that was suggestive of criminal activity was sufficient to justify the disciplinary action taken against him. We reverse the circuit court's judgment and uphold Mr. Pleasant's termination.

In February 2004, a state trooper stopped a car after observing that one of its taillights was out. Mr. Pleasant had asked the state trooper to stop this car and had told him where it would be at a given time, based on a tip he had received from a Florissant, Missouri, police officer that the woman driving the car usually had

drugs on her.[1] The woman stopped was actually an FBI agent, who was investigating the Florissant police officer (Jim Cox) on suspicion that he was violating the civil rights of the woman (Christine Lambert) the FBI agent was impersonating. The state trooper who made the stop, Trooper Mike Broniec, did not find any drugs after searching the agent's purse with her consent. She was cited for having a suspended license and told to call someone for a ride. Trooper Broniec and Mr. Pleasant were questioned about the events that led to the traffic stop, but were not charged with any crime. Officer Cox pled guilty to and was convicted of attempting to violate Ms. Lambert's civil rights, including an attempt to plant drugs on her.[2]

Mr. Pleasant, when terminated, was a nineteen-year MSHP veteran with an unblemished record. He was serving as a Corporal with the Division of Drug and Crime Control and was number one on the promotion list. Mr. Pleasant had received a call from Officer Cox in December 2003 asking for his assistance in a case involving someone Officer Cox knew who was embroiled in a child custody dispute with a girlfriend (Ms. Lambert).[3] Officer Cox, who knew Mr. Pleasant because they occasionally worked together at approved secondary employment with a private security firm, asked for the highway patrol to stop the woman, whom he described as a "meth whore." Mr. Pleasant, who had no reason to suspect that Officer Cox was a "dirty cop," said he would do so when he had the time and if he had probable cause. He considered the tip to be nothing out of the ordinary in his line of work; he often received tips about illegal drugs in this manner.

Between December and the following February when the stop occurred, Officer Cox contacted Mr. Pleasant four additional times. During the third call, Officer Cox, again asking for the woman to be stopped, also said, "Can we make sure that she's got drugs on her when she's stopped?" Mr. Pleasant later told investigators that the statement was so outlandish that he thought it was a joke. Nonetheless, he responded by saying "We don't do that shit."[4] According to Mr. Pleasant, in his nineteen years as a state trooper, no one had ever seriously made such a suggestion to him, although he had heard other officers joke about planting drugs. His supervisor initially denied that he had ever heard such joking, but testified on cross-examination that he actually could not recall whether he may have heard such joking, particularly in training. His supervisor also stated that subordinates were not required to file reports about jokes.

1. This woman was Christine Lambert.

2. There was apparently videotape evidence showing Officer Cox and Ms. Lambert's boyfriend, one William Stallings, discussing a plan to plant drugs on her. Mr. Stallings was being investigated by the FBI for allegedly spending the proceeds of a bank loan for improvements to his residence rather than on the construction business for which it had been designated. In exchange for a sentence reduction, Mr. Stallings brought Officer Cox's conduct to the attention of the FBI and cooperated with the agency in its investigation of Officer Cox.

3. Initially, Officer Cox identified the man with the custody problem as a friend, but later told Mr. Pleasant that the man was a business client.

4. Mr. Pleasant provided the information about this exchange to investigators and willingly testified against Officer Cox before a federal grand jury—he had not been subpoenaed to appear nor did he ask for immunity. He further agreed to undergo a polygraph examination as to the truthfulness of his statement that he believed Officer Cox was joking, but the Patrol chose not to administer such examination.

The comment was never repeated, but just before the stop occurred, Officer Cox called Mr. Pleasant again and provided specific details about the woman's travel route, the car she would be driving, and when she would be driving the route.[5] Mr. Pleasant passed along this information when he asked Trooper Broniec to make the stop and only told him she would have meth on her. When asked about the source of the information, Mr. Pleasant told Trooper Broniec, "a little birdie told me."

Mr. Pleasant was informed, after a hearing before an MSHP board, that he was being terminated for violating a number of general and special orders. Those orders deal with conduct unbecoming a Patrol employee that brings disrepute on the employee or the Patrol and adversely affects morale; and failing to safeguard the civil rights of all persons, keep immediate supervisors informed, or take appropriate action "if a violation of law is readily apparent or reasonably suspected." Specifically, the orders that Mr. Pleasant was charged with violating provide:

General Order 26–02–0842, Item I–B–2: Employees will not engage in conduct that is unbecoming an employee of the Patrol. Such conduct includes that which has a tendency to adversely affect, lower, or destroy public respect or confidence in the Patrol, brings the Patrol or any Patrol component or employee into disrepute, brings discredit upon the employee, adversely affects or impairs the operation, efficiency, or morale of the Patrol, or adversely affects the working performance of the employee.

General Order 26–02–0842, Item II–C–1: Members will respect and safeguard the rights of all persons to pursue their lives and lawful occupations free from illegal interference.

General Order 42–01–0701, Item II–A–1: Any member who has knowledge of or reasonably suspects criminal activity or a violation of a state or federal law will take appropriate action if a violation of law is readily apparent or reasonably suspected, i.e., initiate an investigation, arrest the violator, submit the appropriate report, or report the activity to the appropriate official or agency.

General Order 42–01–0701, Item II–A–4: Any member who has knowledge of or reasonably suspects criminal activity or a violation of a state or federal law will take no action in a civil matter with the exception of complying with court orders, ex parte orders, and orders of protection as outlined in General Order 55–02, "Domestic Violence and Orders of Protection."

Division of Drug and Crime Control Special Order Number 15, Item II–A: Each investigator shall keep their [sic] immediate supervisor informed of all criminal or narcotic investigations in which they are involved.

The board's recommendation indicates that his most serious transgressions were (i) failing to inform his supervisor about Officer Cox's reference to planting drugs, and (ii) failing to provide information about the circumstances surrounding Officer Cox's tip to Trooper Broniec before the stop was made, which failure resulted in Trooper Broniec and Mr. Pleasant becoming suspects in a federal investigation of conspiracy against Ms. Lambert's rights. According to the board, Mr. Pleasant's "failure to properly perform his assigned

---

**5.** That Officer Cox had made a number of calls with the tip; that the tip was made in the context of a custody dispute; and that Officer Cox had specific details about the woman, her car, her schedule, and her route were not unusual in Mr. Pleasant's experience with MSHP's Drug Division.

duty brought discredit and disrepute on him and the Patrol, and adversely affected and impaired the operation and morale of the Patrol." The board's recommendation was unanimous.[6]

Mr. Pleasant filed an appeal to the circuit court, which reversed, finding that due to the extreme punishment handed down, the board must have concluded that the misconduct was intentional.[7] Because the court was unable to find evidence of Mr. Pleasant's intent, other than his own statements that he thought Officer Cox's comment was a joke, it determined that the termination was not based on competent and substantial evidence on the whole record. The MSHP filed this appeal, and Mr. Pleasant claims that the MSHP erred in terminating his employment for not reporting Officer Cox's statement to his supervisor.

We review administrative factual findings by viewing the evidence in a light most favorable to the agency decision. *Gamble v. Hoffman,* 732 S.W.2d 890, 892 (Mo. banc 1987) (citations omitted). We are limited to determining whether the decision was supported by substantial and competent evidence; whether it was arbitrary, capricious or unreasonable; or whether the agency action constituted an abuse of discretion. *Id.* We may not substitute our own judgment for that of the agency, and may not set aside the administrative decision unless it is clearly contrary to the overwhelming weight of the evidence. *Id.* We defer to the agency's credibility determinations and, if the evidence supports either of two contrary conclu-

sions, the agency's decision must prevail. *Id.* It is only where the agency's findings are contrary to the determinative undisputed facts that the decision is arbitrary and unreasonable, and we must reverse. *Halford v. Mo. State Highway Patrol,* 909 S.W.2d 362, 364 (Mo.App. W.D.1995).

The board determined that Mr. Pleasant could not have taken Officer Cox's comment as a joke because he responded by saying "We don't do that shit." We cannot substitute our judgment for that of the board. *Gamble,* 732 S.W.2d at 892. Officer Cox's statement, "Can we make sure that she's got drugs on her when she's stopped," may be ambiguous, and it is possible to conclude that Mr. Pleasant did not have actual knowledge or a reasonable suspicion of criminal activity under the circumstances.[8] Nevertheless, because the evidence could support either of two contrary conclusions and because the MSHP's decision was not contrary to the overwhelming weight of the evidence, we reverse the circuit court and affirm the disciplinary action imposed.

HAROLD L. LOWENSTEIN, P.J., and JOSEPH M. ELLIS, J., concur.

---

6. The hearing board was composed of six individuals, including four who were Mr. Pleasant's peers.

7. Section 43.150 RSMo. (2000), does not require intentional misconduct as a justification for a patrol member's removal. The statute requires removal "only for cause after a for-

mal charge has been filed in writing before or by the superintendent and upon a finding by a majority of a board of six members." § 43.150.1.

8. *See* General Order 42–01–0701, Item II–A–1, *supra.*