**Brian K. POGUE,**
**Petitioner/Respondent,**

v.

**Larry CRAWFORD, et al.,**
**Respondents/Appellants.**

**No. ED 90859.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 30, 2008.

---

Francis X. Duda, Dennis S. Harms, Anderson & Gilbert, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dana C. Ceresia, Assistant Attorney General, St. Louis, MO, for respondent.

## Introduction

PATRICIA L. COHEN, Judge.

This is an appeal from the judgment of the Circuit Court of St. Francois County reversing the Personnel Advisory Board's ("PAB") decision to affirm the Department of Corrections' ("DOC") decision to dismiss Brian Pogue.[1]

## Background

Mr. Pogue was a Corrections Caseworker I at Farmington Correctional Center ("FCC"), a medium security facility for male offenders where he had worked for nearly twelve years. On May 31, 2005, Joe Robinson, FCC's Safety Manager and Drug Test Coordinator, contacted Mr. Pogue pursuant to the DOC's random drug testing program and asked him to report to the Employee Health Office. Mr. Pogue reported for testing immediately. The drug test began at 10:35 a.m.

Mr. Robinson took Mr. Pogue to the restroom, explained the testing procedure, and handed him a specimen cup. Mr. Pogue had difficulty producing a sample for testing and, when he gave Mr. Robinson the specimen cup, it contained only a small amount of urine. Mr. Robinson discarded the contents of the cup and informed Mr. Pogue that he needed to collect at least 20 milliliters of urine. Mr. Robinson told Mr. Pogue that he had three hours to provide a 20 milliliters sample.

Over the next three hours, Mr. Pogue consumed eight ounces of water every thirty minutes. At 12:30 p.m., Mr. Pogue attempted to produce another sample but was unable to urinate. When the three-hour time period expired, Mr. Pogue informed Mr. Robinson that he would not be able to produce a urine sample. Mr. Robinson advised Mr. Pogue that his failure to provide a sample constituted a refusal and brought Mr. Pogue to the office of Al Luebbers, FCC superintendent. Mr. Luebbers contacted the DOC's central office and placed Mr. Pogue on administrative leave.

On June 6, 2005, Mr. Luebbers held a pre-disciplinary meeting with Mr. Pogue. At the meeting, Mr. Pogue attributed his inability to provide a urine sample to his allergy medication, Zyrtec, which may inhibit patients' ability to urinate. Mr. Pogue provided Mr. Luebbers with Patient Medication Information sheets and receipts for his allergy medications, as well as progress notes from a June 3, 2005 appointment with his primary physician, Dr. Jesse Hoff. Dr. Hoff's notes indicated that Mr. Pogue suffered chronic allergies for which he was taking Zyrtec and that he had experienced a change in his "urine character." [2] Dr. Hoff provided Mr. Pogue a three-day sample pack of Avelox, an antibiotic used to treat urinary tract infections.

During the meeting, Mr. Luebbers contacted Steve Long, Director of the Division of Adult Institutions, and asked whether he should allow Mr. Pogue to submit a second drug test. Mr. Long did not object to the second test but suggested that Mr. Luebbers contact John Bowen, head of the toxicology lab, to inquire whether a second test was permitted under the DOC's proce-

---

1. Although the DOC filed the appeal, Mr. Pogue remains the appellant pursuant to Rule 84.05(e).

2. Employee later provided the DOC with a note from Dr. Hoff dated July 11, 2005 diagnosing Employee with shy bladder syndrome and stating, "may need to have extra time allowed to produce sample for urine test."

dures. Unable to reach Mr. Bowen, Mr. Luebbers spoke to Mr. Bowen's lab assistant who stated no objection to a second test. Accordingly, Mr. Luebbers offered Mr. Pogue the opportunity to submit to a second drug test. Mr. Pogue immediately agreed to provide another urine sample, which was collected and sent for testing. Later that day, Mr. Pogue's drug test returned a negative result for illegal narcotics under the DOC's policy.

On June 7, 2005, the day after Mr. Pogue's second drug test, Dr. Jan Elliott, the DOC's Medical Review Officer, reviewed the medical information provided by Mr. Pogue. Dr. Elliott concluded that Mr. Pogue did not provide a legitimate medical explanation for his failure to produce a urine sample on May 31, 2005.

By letter dated July 6, 2005, the DOC notified Mr. Pogue that he was dismissed from his position at FCC effective July 15, 2005. Mr. Pogue filed an appeal with the PAB, and the PAB affirmed that Mr. Pogue's dismissal was "for the good of the service." Mr. Pogue appealed the PAB's decision to the Circuit Court of St. Francois County, which held that Mr. Pogue's dismissal was not supported by the competent and substantial evidence presented and/or was arbitrary, capricious, or unreasonable. The trial court ordered Mr. Pogue reinstated and remanded the case to the PAB to determine the proper amount of backpay and benefits.

### Standard of Review

■ On appeal, we review the PAB's decision, and not that of the circuit court, to determine whether the agency action: (1) is in violation of constitutional provisions; (2) is in excess of the statutory authority or jurisdiction of the agency; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any reason, unauthorized by law; (5) is

made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious or unreasonable; or (7) involves an abuse of discretion. Mo.Rev.Stat. § 536.140.2 (2008); State Bd. of Registration for Healing Arts v. McDonagh, 123 S.W.3d 146, 152 (Mo. banc 2003). An agency's decision is arbitrary and unreasonable if its findings are contrary to the determinative undisputed facts. Pleasant v. Missouri State Highway Patrol, 181 S.W.3d 243, 247 (Mo. App. W.D.2006).

■ The scope of a trial court's subject matter jurisdiction is a question of law which we review de novo. In re Marriage of Jeffrey, 53 S.W.3d 173, 175 (Mo.App. E.D.2001).

### Discussion

#### 1. Jurisdiction of the Trial Court

■ The DOC claims that the trial court lacked subject matter jurisdiction because Mr. Pogue "failed to serve the [PAB] with a copy of his petition as required by Mo. Rev.Stat. § 536.110.2." Mr. Pogue maintains that because he timely filed the petition, delivered the petition to the DOC, obtained the record from the PAB and timely filed it with the circuit court, and delivered a copy of the petition to the PAB, the PAB did not suffer a denial of due process.

■ Section 536.110.2 provides that:
No summons shall issue in such case, but copies of the petition shall be delivered to the agency and to each party of record in the proceedings before the agency or to his attorney of record, or shall be mailed to the agency and to such party or his said attorney by registered mail, and proof of such delivery or mailing shall be filed in the case.

Mo.Rev.Stat. § 536.110.2 (2008). Notably, Section 536.110.2 does not contain a time

limitation for delivery of copies of the petition. *Bresnahan v. Bass,* 562 S.W.2d 385, 388 (Mo.App.1978); *see also Binns v. Missouri Div. of Child Support Enforcement,* 1 S.W.3d 544, 546 (Mo.App. E.D.1999) ("Missouri statutes do not set out any time limits within which the petition for review must be served on requisite parties."). In any event, it is well-settled that the "primary purpose of [Section 536.110.2] is to provide notice to the opposing party that a petition has been filed in order to eliminate any claim of denial of due process under the state or federal constitutions." *Bresnahan,* 562 S.W.2d at 388 (citation omitted). Thus, Section 536.110.2 "is not violated unless notice is so untimely as to deprive the [parties] of due process." *Id.*; *see also State ex rel. Cass County v. Dandurand,* 759 S.W.2d 603, 606 (Mo.App. W.D.1988) ("Timely notice to satisfy due process is not a matter for rigid limits but will vary from case to case."). Where a party is "aware of the review proceeding in sufficient time to prepare, appear and be heard," our courts have held that due process rights have not been infringed. *Williamsburg Truck Plaza v. Muri,* 857 S.W.2d 534, 537 (Mo.App. W.D.1993). If no notice is given and the property rights of a party who participated in the cause before the administrative body are affected, due process is infringed. *Dandurand,* 759 S.W.2d at 605.

In this case, Mr. Pogue timely filed his petition for review in the circuit court on March 26, 2007. On the same date, he delivered copies of the petition to the DOC. On June 12, 2007, Mr. Pogue filed the transcribed record of the PAB proceeding without objection and, on December 6, 2007, both the DOC and Mr. Pogue appeared and fully presented their argu-ments to the circuit court. On December 19, 2007, the circuit court issued its order reinstating Mr. Pogue. Mr. Pogue delivered a copy of the petition for review to the PAB on January 31, 2008.[3]

In light of the above, our inquiry is: whether the notice Mr. Pogue provided the PAB was so untimely as to deprive the PAB of due process. *Bresnahan,* 562 S.W.2d at 388. In *Henderson v. Lombardi,* the Western District held that "[o]ne of the reasons it is necessary for the agency to be notified of a circuit court petition is because the agency supplies the record of the proceeding for review." 77 S.W.3d 109, 112 (Mo.App. W.D.2002). Here, Mr. Pogue requested the record from the PAB and received it from the PAB in sufficient time to file it within thirty days of the filing of the petition thereby satisfying a primary purpose of notice to the PAB.

The DOC has not identified in what way the PAB's due process rights were implicated, and we are unable to discern any infringement as a result of Mr. Pogue's delay in providing copies of the petition to the PAB. In *Binns v. Missouri Div. of Child Support Enforcement,* we rejected an agency's assertion of a due process violation for failure to deliver a petition to a party where it did not appear that the party's due process rights were violated and the party did not challenge service of the petition. 1 S.W.3d 544, 546 (Mo.App. E.D.1999). Likewise, here there is no question that the DOC, which asserts a due process violation on behalf of the PAB, had sufficient time to prepare, appear and be heard at the review proceedings. There is also no question that, because the PAB's record was timely provided to the circuit court, a central purpose of the stat-

---

**3.** At the time of oral arguments, the circuit court was still considering Mr. Pogue's appli-cation for attorneys' fees.

ute, as it relates to agency notice, was fulfilled.

In support of its argument that Mr. Pogue's delay in providing copies of the petition for review to the PAB deprived the trial court of subject matter jurisdiction over Mr. Pogue's appeal, the DOC relies on *Henderson v. Lombardi,* 77 S.W.3d at 112. In Henderson, the Court determined that the PAB was an agency within the meaning of Section 536.010 necessitating delivery of copies of the petition for review upon the PAB. *Id.* Clearly, the *Henderson* court did not decide the critical issue before us: whether a delay in providing the copies of the petition to the PAB resulted in a violation of the PAB's due process rights. Indeed, in *Henderson,* unlike here, the employee never provided the PAB with a copy of the petition. Furthermore, the employee in *Henderson* failed to file a copy of the record before the PAB with the circuit court. Because *Henderson* did not reach the issue before us we do not find it persuasive.

### 2. Mr. Pogue's Dismissal

■ In his second point, Mr. Pogue argues that the PAB's determination that his dismissal "was for the good of the service" was unsupported by competent and substantial evidence; was arbitrary, capricious, or unreasonable; was contrary to law; and was an abuse of discretion. Specifically, Mr. Pogue claims that by offering him a second drug test, the DOC accepted his medical explanation for his inability to produce an adequate urine sample and was bound by the results of the second drug test. The DOC counters that its disciplinary action was consistent with its policies and procedures.

Due process requires administrative agencies to comply with their own rules when dismissing an employee. *Collier v. Metro. St. Louis Sewer Dist.,* 706 S.W.2d 894, 896 (Mo.App. E.D.1986). In this case, the DOC did not comply with its policies and procedures when it dismissed Mr. Pogue.

Pursuant to its Employee Drug Testing Policy, DOC employees are subject to random drug testing. D2.11.11(III)(I). The DOC may also administer "reasonable suspicion" drug tests when a supervisor believes there is reasonable suspicion that an "employee is under the influence of a substance." D2–11.11(III)(H)(1). In either type of drug test, failure to provide at least 20 milliliters of urine within three hours is considered a refusal. D2–11.11(III)(O)(7)(f)(1). If an employee attributes his failure to produce a urine sample to a medical condition, he shall be given five working days to provide a physician's medical explanation, and the DOC "reserves the right to have the medical explanation reviewed and verified by an independent licensed physician." D2–11.11(III)(O)(7)(f)(2), (2)(A). When a reasonable suspicion drug test is performed, "the employee will be placed on administrative leave pending drug testing results." D2–11.11(III)(H)(6)(g). "If the test results are negative, administrative leave status will be terminated." D2–11.11(III)(H)(6)(i).

At the pre-disciplinary meeting on June 6, 2005, Mr. Pogue submitted to Mr. Luebbers a medical explanation for his inability to urinate on May 31, 2005. Mr. Luebbers then contacted Mr. Long, acting director of the division of adult institutions, and obtained permission to offer Mr. Pogue a second drug test. As the DOC conceded at oral argument, Mr. Long had the discretion and authority to authorize Mr. Luebbers to administer a second drug test. Although DOC procedures provide the DOC with the option of having the medical explanation reviewed, in this case, the DOC chose to authorize the second test

prior to obtaining the medical review. The test produced a negative result. Only after the DOC permitted a second drug test did the DOC obtain a medical review of Mr. Pogue's explanation for failing to produce sufficient urine.

Having permitted the second drug test and having received a negative test result, the DOC was required under its procedures to terminate Mr. Pogue's administrative leave status: "If the test results are negative, administrative leave status will be terminated." D2–11.11(III)(H)(6)(i). By terminating Mr. Pogue after he produced a negative urine sample, the DOC violated its policies and procedures. The PAB's decision to uphold Mr. Pogue's dismissal was arbitrary and capricious because it contravened DOC policies and procedures and was therefore unsupported by competent and substantial evidence.

### Conclusion

The judgment of the circuit court is affirmed.

KURT S. ODENWALD, Presiding Judge and GLENN A. NORTON, Judge, concur.