**Judy M. LUTTRELL, Petitioner–Respondent,**

v.

**Denis AGNIEL, Respondent–Appellant.**

**No. SD 30517.**

Missouri Court of Appeals, Southern District, Division Two.

June 17, 2011.

---

Sara E. Dick, Jefferson City, MO, for Appellant.

H. Mark Preyer, Kennett, MO, for Respondent.

JEFFREY W. BATES, Judge.

Judy Luttrell (Luttrell) was employed as a probation and parole officer at the Division of Probation and Parole (Division) until she was dismissed for having avoidable contact with an offender in violation of Division policy. After a hearing, her termination was affirmed by the Personnel Advisory Board (PAB). The PAB's decision was reversed by the circuit court, and this appeal followed. We reverse and remand with directions.

### Factual and Procedural Background

Luttrell and Michael Easley (Easley) knew each other as children, and they dated for several years when Luttrell was a young adult. In 1977, Easley was convicted of armed robbery and stealing, and was sentenced to serve ten years in prison. In 1981, Luttrell was charged with aiding the escape of Easley and another offender

from prison by providing them with transportation, money and a gun. Luttrell pled guilty and received a three-year sentence. Luttrell was paroled on her first eligibility date and successfully completed parole.

Denis Agniel (Agniel) served as the Division's Chairman. One of Agniel's duties was to act as the Division's appointing authority. Luttrell was hired by the Division in 1998 as a probation and parole officer. Department Procedure D2–11.10 § III.E prohibited a Division employee from having "any avoidable contact or association with an offender ... unless specifically authorized.... Contact includes, but is not limited to, oral or written communication, business or social associations and any other act of over[t] familiarity." This procedural rule was adopted to prevent the Division's services from being adversely affected by staff members' professional lives not being kept distinct from their personal lives. Various problems can result from an employee's violation of the avoidable contact policy, including: (1) the creation of a conflict of interest because of employee's access to confidential information; (2) the potential to compromise law enforcement investigations; and (3) the appearance that an offender has special privileges or access to an employee.

In 2000, Easley was placed on parole. He returned to Kennett, where he was placed under the supervision of an officer who worked in the same probation and parole office as Luttrell. The Division received a report that Luttrell and Easley were engaging in avoidable contact. Luttrell had been seen in town with Easley, who was carrying a case of beer in violation of the conditions of his parole. When an offender is seen in a common, casual setting with a probation and parole officer, the appearance of preferential treatment can be created. An internal investigation was conducted, and Agniel issued a letter

of reprimand to Luttrell in December 2000. After noting that Luttrell had admitted to violating Department Procedure D2–11.10 § III.E concerning avoidable contact, Agniel's letter stated: "You need to fully recognize the seriousness of this violation and take the necessary steps to ensure future incidents of this nature do not occur."

About six months after receiving the reprimand letter, Luttrell resumed her relationship with Easley. Luttrell knew this was in violation of the Division's policy prohibiting avoidable contact with an offender. In June 2002, members of the Division's administration started to receive reports from staff members and law enforcement personnel in Kennett that Luttrell and Easley were spending time together around town. In July 2002, the Division commenced an investigation and obtained evidence of contact between Luttrell and Easley. This evidence included observations of Easley entering and exiting Luttrell's home during surveillance of her residence. In August 2002, Luttrell was interviewed by an investigator. Initially, Luttrell denied multiple times that she was having any contact with Easley. Luttrell then changed her story and admitted that Easley had been staying overnight at Luttrell's residence three to four nights per week for approximately 18 months. Luttrell said that she and Easley were "pretty close during that time period." Luttrell admitted that she spoke to Easley about the conditions of his supervision, including a specific discussion concerning a drug test that he had failed. During the interview, Luttrell acknowledged that she had been in direct violation of the same avoidable contact policy that resulted in her prior reprimand. At a pre-disciplinary meeting with a Division administrator in September 2002, Luttrell admitted that she had been having avoidable contact with Easley for

approximately 18 months in violation of Division policy. During a due process meeting with Agniel, Luttrell again admitted that she had violated Division policy through her ongoing relationship with Easley and that she knew it had been wrong.

On October 18, 2002, Agniel dismissed Luttrell for violating Department Procedure D2–11.10 § III.E concerning avoidable contact with offenders. Luttrell appealed her dismissal to the PAB, which issued its decision and order approving the dismissal in March 2004. The PAB held that "[t]he detrimental aspects of [Luttrell's] conduct of avoidable contact with Michael Easley were substantial, directly related to her duties, and detrimental to the public's interest[.]" It further concluded that her dismissal "serves the good of the service and efficient administration required" by the Division. Thereafter, Luttrell filed a petition for review of the PAB's decision with the circuit court pursuant to § 36.390.[1] The circuit court reversed the PAB's decision and order, deeming it arbitrary and unsupported by substantial evidence. This appeal followed.

### Standard of Review

■ On appeal, we review the decision of the PAB rather than the judgment of the circuit court. *Lombardi v. Dunlap,* 103 S.W.3d 786, 789 (Mo.App.2003). We must uphold the PAB's decision unless: (1) it violates constitutional provisions; (2) it is in excess of the agency's jurisdiction or statutory authority; (3) it is unsupported by competent and substantial evidence upon the whole record; (4) it is unauthorized by law for any reason; (5) it is made upon unlawful procedure or without a fair trial; (6) it is arbitrary, capricious or unreasonable; or (7) it involves an abuse of discretion. § 536.140.2 RSMo Cum.Supp.

(2009); *Pogue v. Crawford,* 265 S.W.3d 868, 871 (Mo.App.2008). We must examine the whole record to determine whether the evidence supports the PAB's decision. *Missouri Veterans' Comm'n v. Vanderhook,* 290 S.W.3d 115, 119 (Mo.App.2009). If we decide the PAB's decision was supported by competent and substantial evidence on the whole record, its decision will be upheld even though there was evidence that would have supported a contrary determination. *See Lagud v. Kansas City Bd. of Police Comm'rs,* 136 S.W.3d 786, 791 n. 5 (Mo. banc 2004). We must defer to the PAB's determinations on the weight of the evidence and the credibility of witnesses. *Stacy v. Harris,* 321 S.W.3d 388, 393–94 (Mo.App.2010). "An agency's decision is arbitrary and unreasonable if its findings are contrary to the determinative undisputed facts." *Pogue,* 265 S.W.3d at 871.

### Discussion and Decision

■ As the Division's appointing authority, Agniel was authorized to dismiss Luttrell for cause "when he considers that such action is required in the interests of efficient administration and that the good of the service will be served thereby." § 36.380. On appeal, Luttrell contends the PAB erred in concluding that: (1) the contact between Luttrell and Easley was avoidable; and (2) Luttrell's dismissal served the efficient administration of the Division. Luttrell argues that the PAB's decision was not supported by competent and substantial evidence on the whole record and was arbitrary, capricious and unreasonable. We disagree.

We conclude that the PAB's decision was supported by competent and substantial evidence on the whole record. Luttrell was aware of the avoidable contact policy

---

1. All references to statutes are to RSMo (2000) unless otherwise specified.

and had been reprimanded for violating it in December 2000. The letter of reprimand advised Luttrell of the seriousness of the violation and warned her not to engage in such behavior again. Despite that written reprimand, Luttrell knowingly violated the avoidable contact policy within six months. She did so continuously for approximately 18 months, knowing that it was wrong. After the second series of violations became known, Luttrell initially denied any wrongdoing. Thereafter, she admitted being in violation of Division policy for an 18–month period by allowing Easley to stay overnight three to four times per week. Luttrell also discussed matters relating to Easley's supervision with him, even though she was not his parole officer.

We are not persuaded by Luttrell's argument that her contact with Easley was unavoidable because he was caring for Luttrell's ill mother, who stayed for a time at Luttrell's home. While Luttrell so testified at the PAB hearing, she told a different story when she was interviewed in August 2002. At that time, Luttrell claimed Easley was staying in her home because he was helping her do some remodeling. As the PAB noted, Luttrell renewed her association with Easley in the summer of 2001, while Luttrell's mother did not become ill until March 2002. The PAB did not find Luttrell's subsequent explanation credible, which was its prerogative. We defer to that factual finding. *Stacy*, 321 S.W.3d at 393–94. Agniel also testified about the rationale for the avoidable contact policy and why violations can adversely affect the way in which the Division administers services in a community. As Agniel explained, the problems arising from such violations include the creation of conflicts of interest, the potential to compromise ongoing investigations, and the appearance an offender has special privileges or access to an employee. Agniel believed that Luttrell's dismissal was required for the good of the service. It would have been an abuse of the PAB's discretion to overturn Agniel's judgment on that issue. *See Lombardi,* 103 S.W.3d at 791–92; *Missouri Dept. of Corrections v. Cheeney,* 926 S.W.2d 939, 940–41 (Mo. App.1996). In sum, the PAB's decision that Luttrell's contact with Easley was avoidable is supported by competent and substantial evidence on the whole record. *See Lombardi,* 103 S.W.3d at 791.

Luttrell's remaining argument fares no better. As noted above, "[a]n agency's decision is arbitrary and unreasonable if its findings are contrary to the determinative undisputed facts." *Pogue,* 265 S.W.3d at 871. That did not occur here. The determinative facts were disputed, and the PAB's factual findings are supported by the evidence. Accordingly, the PAB's decision was not arbitrary, capricious or unreasonable. Point denied.

The PAB did not err in affirming Luttrell's dismissal. Accordingly, the judgment of the circuit court is reversed, and the cause is remanded. The circuit court is directed to enter a judgment affirming the PAB's decision and order.

RAHMEYER, P.J., and SCOTT, C.J., Concur.