

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| ANTHONY PIERCY, | ) |
| | ) |
| Respondent, | )    WD82123 |
| | ) |
| v. | )    OPINION FILED: August 20, 2019 |
| | ) |
| THE MISSOURI STATE HIGHWAY | ) |
| PATROL AND ERIC T. OLSON, | ) |
| | ) |
| Appellants. | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Patricia S. Joyce, Judge

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Gary D. Witt, Judge
and Thomas N. Chapman, Judge

The Missouri State Highway Patrol ("Highway Patrol")[1] appeals the decision of the

Circuit Court of Cole County, remanding to the Superintendent of the Highway Patrol

("Superintendent") the disciplinary action regarding Anthony Piercy ("Piercy"). The

circuit court found that the Superintendent did not have the statutory authority to terminate

---

[1] In addition to the Highway Patrol, the underlying Petition was brought against the Highway Patrol Superintendent, Sandra Karsten, for her actions taken in her official capacity. On August 13, 2019, the Highway Patrol moved to substitute Eric Olson as Superintendent following Sandra Karsten's appointment to serve as the Director of the Missouri Department of Public Safety and Eric Olson's appointment and confirmation to the position of Superintendent. That motion is sustained. For ease of discussion we refer to both parties collectively as the Highway Patrol.

Piercy's employment where the Disciplinary Review Board ("Board") recommended a lesser punishment. The Highway Patrol raises two allegations of error on appeal and in addition argues that the case before us is now moot. We affirm and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

On May 14, 2014, Piercy was employed by the Highway Patrol as a Trooper and was on marine duty. While working a shift on the Lake of the Ozarks, Piercy stopped Brandon Ellingson ("Ellingson") under suspicion of operating a boat while intoxicated. A portable breath test showed the presence of alcohol in Ellingson's blood. Piercy placed Ellingson under arrest, handcuffed Ellingson's hands behind his back, and placed a life jacket around Ellingson with his body and handcuffed arms inside the life jacket. Piercy secured the life jacket with the three front clips but neglected to secure the crotch strap. While Piercy was transporting Ellingson to the zone office in Piercy's patrol boat, Piercy had to slow down quickly due to choppy waters. As Piercy slowed and stopped, Ellingson began to exit the patrol boat, falling over the side of the boat and into the water. Piercy first attempted to reach Ellingson with the boat hook but, as he did, the life jacket came off of Ellingson. Piercy immediately attempted a water rescue but was unsuccessful. As a result Ellingson drowned.

Piercy was criminally charged based on his actions during his encounter with Ellingson and ultimately plead guilty to negligent operation of a vessel, a class B misdemeanor. The court sentenced Piercy to 180 days incarceration in the county jail, with

2

execution of the sentence suspended, and placed him on two years' supervised probation with ten days of shock incarceration in the county jail.[2]

Following the guilty plea, the Highway Patrol initiated an investigation by and through its Professional Standards Division ("PSD"). The PSD report concluded that there was cause for discipline and the Board was convened by the Superintendent to conduct a hearing pursuant to section 43.150.[3] The Board held a hearing on December 11, 2017. Following the hearing, the Board issued Findings of Fact, Conclusions of Law and Recommendation; the Board found the factual allegations to be true and recommended that Piercy be reinstated to active duty and as a disciplinary sanction transferred to a different troop.

On December 15, 2017, following a review of the record made before the Board, the Superintendent issued her own Final Decision, ordering Piercy's employment with the Highway Patrol terminated.

Piercy filed a Petition for Judicial Review in the Circuit Court of Cole County, eventually filing a First Amended Petition for Judicial Review ("Petition"). The Petition raised five counts. As relevant here, Count I asked the court to review the Superintendent's action as a non-contested case under section 536.150 and in the alternative Count II requested the court to review the matter as a contested case under section 536.140. The

---

[2] The Highway Patrol refers in their brief to a newspaper article regarding a civil action arising from the underlying facts. That information is not in the legal file or record before us. Piercy moved to strike all portions of the Highway Patrol's brief which refer in any way to matters outside the record. That motion is sustained and all portions of the Highway Patrol's brief that refer to matters outside the record are stricken. We caution counsel to avoid such violations in the future.

[3] All statutory citations are to RSMo 2016 as currently updated, unless otherwise noted.

Highway Patrol moved to dismiss Count I because the court had no authority to review the case as a non-contested case and noticed the motion to dismiss for a hearing. Piercy filed a motion for summary judgment as to Count I and noticed that motion for a hearing.

The circuit court held a hearing on both motions on June 22, 2018. Following the hearing, the court issued Final Judgment on Counts I, II, III and IV ("Judgment"). The Judgment found that whether it was a non-contested case or a contested case--Counts I and II--Percy's dismissal was a violation of the Superintendent's statutory authority. Because Counts III and IV sought plenary administrative review in the alternative, they were dismissed as moot. Count V remained but the Judgment was certified as interlocutory and final for the purposes of appeal.[4]

The Highway Patrol appealed.

---

[4] A judgment may be certified for interlocutory appeal if it disposes of a distinct "judicial unit." *Capital Fin. Loans, LLC v. Read*, 476 S.W.3d 925, 927 (Mo. App. W.D. 2015). "The required 'judicial unit for an appeal' has a settled meaning: 'the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim.'" *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). Different legal theories seeking to recover damages for the same wrong are not a distinct "judicial unit." *Id.* Instead, where there are "differing," "separate," or "distinct" transactions or occurrences, a judicial unit may be resolved to allow for interlocutory appeal. *Id.* "Claims are considered separate such that their pendency will not prevent appeal following certification under Rule 74.01(b) if they require proof of different facts and the application of distinguishable law, subject to the limitation that severing the claims does not run afoul of the doctrine forbidding the splitting of a cause of action." *Capital Fin. Loans, LLC*, 476 S.W.3d at 928 (quoting *ABB, Inc. v. Securitas Sec. Serv. USA, Inc.*, 390 S.W.3d 196, 201 (Mo. App. W.D. 2012); *See also First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n, Inc.*, 515 S.W.3d 219, 222-23 (Mo. banc 2017) (claims were not distinct judicial units where there were overlapping factual allegations).

In this case, the first four counts of the Petition related to the question of whether Piercy was properly dismissed by the Superintendent. They involve a distinct question of the statutory authority of the Superintendent to order dismissal absent the Board's recommendation under section 43.150. The final outstanding count of the Petition, Count V, alleges that the Superintendent should not have withheld pay and benefits pending a final disposition of his discipline proceedings and does not involve the interpretation of section 43.150. Count V alleges that a different disciplinary action taken six months prior to the action at issue in the first four counts was unlawful. Although the underlying facts that gave rise to the disciplinary actions are shared, Count V is based on a distinct and separate disciplinary action taken at a different time and implicates the interpretation of different applicable law. The "overlapping factual allegations" provide the background for the disciplinary action and are not the underpinnings of the claim itself. Thus, it is separate and distinct from the questions related to Piercy's dismissal and does not need to be addressed prior to this Court's review of the circuit court's Judgment.

4

## Discussion

The Highway Patrol raises three points of error on appeal. The first two points address alleged errors in the court's Judgment. The third point on appeal alleges that the court erred in denying the Highway Patrol's post-trial motion because the case is now moot given that Piercy's peace officer license has been revoked. Because the third point would be dispositive of the entire case we begin our discussion there.

## I.

"A case is moot if the decision would have no practical effect upon an existent controversy." *Jackson Cnty. Bd. of Election Comm'rs ex rel. Brown v. City of Lee's Summit*, 277 S.W.3d 740, 744 (Mo. App. W.D. 2008) (internal quotation omitted). "When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed." *Id.*

As Piercy notes, while his peace officer license was revoked on an administrative level, that case is still going through the appeals process. The question of Piercy's future employment would not become moot unless and until such time as the revocation of his peace officer license becomes final, a point which was conceded by the Highway Patrol at oral argument.[5] The record contains no final judgment on the license issue and this Court has received no stipulation from the parties that such a final decision has been issued. Even were the revocation to become final during the pendency of this appeal, the case is not rendered moot because, again as noted by Piercy, in the event that this Court finds that the

---

[5] Nothing in this Court's Opinion prevents any future administrative disciplinary action from being taken in the event that Piercy's peace officer license is ultimately revoked.

Superintendent did not have the authority to dismiss Piercy at the point in time that he was dismissed then he may be entitled to make a claim for damages stemming from any period of time between his wrongful termination and any lawful termination, even if he is not ultimately able to be finally reinstated due to a lack of a required license.[6] Therefore Point III is denied.

## II.

"When reviewing a governmental agency's decision, this Court considers whether the matter before the agency was a 'contested' or 'non-contested case' to determine the scope of judicial review." *State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 471 (Mo. banc 2018) (internal quotations omitted). As such we must next address the Highway Patrol's second allegation of error — that the circuit court erred in reviewing the case as a non-contested case under section 536.150 because this action is a contested case, requiring review under section 536.140.

Under the Missouri Administrative Procedure Act ("MAPA") there are two types of cases: contested cases and non-contested cases. The determination of whether a case is "contested" or "noncontested" is made as a matter of law. *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009). "A 'contested case' is defined in the MAPA as 'a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing.'" *Furlong Cos., Inc. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006) (quoting section 536.010(4)). "The MAPA

---

[6] We make no decision as to the availability or validity of any claims that Piercy may later bring regarding his employment and/or termination from the Highway Patrol; we merely point out the possibility of such a cause of action in resolving the mootness issue before us.

does not explicitly define a 'non-contested case,' but it has been defined by [the Missouri Supreme Court] as a decision that is not required by law to be determined after a hearing."

*Id.*

> Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law. The review of a contested case is a review by the trial court of the record created before the administrative body. The trial court's decision upon such review is appealable, but the appellate court also looks back to the record created before the administrative body.

*Id.* (internal citations omitted). By contrast:

> Non-contested cases do not require formal proceedings or hearings before the administrative body. As such, there is no record required for review. In the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision. Under the procedures of section 536.150, the circuit court conducts such a hearing as an original action.

*Id.* (internal citations omitted). The true difference "is simply that in a contested case the private litigant must try his or her case before the agency, and judicial review is on the record of that administrative trial, whereas in a non-contested case the private litigant tries his or her case to the court." *Id.*

We agree with the Highway Patrol that this is a contested case. The Board held a formal hearing at which the presentation of evidence was heard. Present at the hearing were attorneys for the Board, the Highway Patrol, and Piercy. The Board heard witness testimony under oath, including the testimony of Piercy, and the witnesses were subject to cross examination. The Board deliberated and issued written Findings of Fact, Conclusions

of Law and Recommendation regarding disciplinary action against Piercy which are required by section 43.150.1.

In reliance on *Nowden*, the circuit court concluded that because the Superintendent was not bound by the Board's recommendation the case was non-contested. In *Nowden* the Supreme Court reviewed an employee disciplinary action by the Division of Alcohol & Tobacco Control. *Nowden v. Div. of Alcohol & Tobacco Control*, 552 S.W.3d 114, 115-16 (Mo. banc 2018). The parties in that matter disputed whether the case should be classified contested or non-contested. *Id.*at 117. The Court in *Nowden* concluded the case was non-contested for two reasons. The first was that the disciplinary policy at issue did not require a hearing; a hearing was purely discretionary. *Id.* This clearly violates the statutory definition of a contested case which requires "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." Section 536.010(4). The Court went on to state that "[m]oreover, even if a hearing . . . is conducted, the director retains the final decision pursuant to [the internal policy]" and "when a proceeding is merely advisory and does not bind the decision maker, then the administrative proceeding or hearing does not make the matter a contested case[.]" *Id.*

Piercy contends, and the circuit court found, that because the Superintendent had the final authority to "adjudge" the discipline to be imposed on a member, the Board's Findings of Fact, Conclusions of Law and Recommendation was "merely advisory." We disagree. First, unlike in *Nowden,* a formal disciplinary hearing was mandatory. Section 43.150 requires a disciplinary board be convened and a hearing be held before a member

8

of the patrol is subjected to removal, reduction in rank or suspension of more than three days. *See Gamble v. Hoffman*, 695 S.W.2d 503, 505 (Mo. App. W.D. 1985) (superseded by statute) (circuit court issued an interlocutory order remanding the case where disciplinary board had failed to "make findings of fact and draw conclusions of law in accordance with § 536.090" and further ordering the superintendent to read and consider the full record and transcript created by the board before issuing any disciplinary action). But further, the Board's decision was not "merely advisory." Section 43.150 charges the Board with the determination of "whether the charges are true and what discipline, if any, should be imposed." Although the Superintendent has the ultimate authority to impose the recommended discipline, one of the other enumerated disciplines, or no discipline, it is the Board--not the Superintendent--which determines the validity of the allegations of misconduct. Additionally, as is discussed fully below, while the Superintendent ultimately determines the discipline to be imposed, the Board's choice as to whether or not to recommend dismissal *does* act to restrict or grant the Superintendent the authority to dismiss.

The Highway Patrol is correct that this is a contested case. This finding is consistent with existing case law which, although not discussing the issue directly, have treated Highway Patrol disciplinary decisions as contested cases. *See, e.g., Gamble v. Hoffman*, 732 S.W.2d 890, 892 (Mo. banc 1987); *Ehler v. Mo. State Highway Patrol*, 254 S.W.3d 99, 100-01 (Mo. App. W.D. 2008); *Pleasant v. Mo. State Highway Patrol*, 181 S.W.3d 243, 247 (Mo. App. W.D. 2006); *Halford v. Mo. State Highway Patrol*, 909 S.W.2d 362, 364 (Mo. App. W.D. 1995); *Gardner v. Mo. State Highway Patrol Superintendent*, 901

9

S.W.2d 107, 111 (Mo. App. W.D. 1995). Because this is a contested case, we review the administrative record below.

Regardless of the error of the circuit court, we find on appeal, as the circuit court found below, that the narrow issue which must be resolved by this appeal is the correct statutory interpretation of section 43.150 and the authority of the Superintendent to impose punishment that is different or more severe than the Board's recommendation. This is a question of law that this court reviews *de novo*. *State Bd. of Registration for the Healing Arts v. Trueblood*, 368 S.W.3d 259, 261 (Mo. App. W.D. 2012).

### III.

Returning to the Highway Patrol's first point on appeal, the Highway Patrol alleges that the circuit court erred in entering summary judgment on Counts I and II of Piercy's Petition because the ruling was contrary to section 43.150 which confers upon the Superintendent the authority to adjudge the form of discipline of a Trooper regardless of the Board's recommendation.

Section 43.150 governs the discipline and dismissal of members of the Highway Patrol who have completed their probationary period. In relevant portion, section 43.150 states:

> After a probation period of one year the members of the patrol shall be subject to removal, reduction in rank or suspension of more than three days only for cause after a formal charge has been filed in writing before or by the superintendent and upon a finding by a majority of a board of six members randomly selected from troops or divisions other than that of the accused. . . . Within thirty days after the petition is filed, unless the accused consents to an extension of time, the board shall conduct a hearing and report to the

10

superintendent the finding by the majority of the board, whether the charges are true and what discipline, if any, should be imposed. All lawful rules, regulations, and orders of the superintendent shall be obeyed by the members of the patrol who shall be subject to dismissal as provided or to one or more of the following:

(1) Suspension not to exceed thirty days;

(2) Fine;

(3) Reduction in rank; or

(4) Disciplinary transfer at the member's expense;

as the superintendent may adjudge.

Section 43.150.

The primary rule of statutory construction is to determine the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *Wolfe v. Mo. Dep't of Corr.*, 199 S.W.3d 219, 221 (Mo. App. W.D. 2006). When ascertaining legislative intent, each word, clause, sentence, and section of a statute should be given meaning, and a court should not interpret a statute so as to render some phrases mere "surplusage." *Middleton v. Mo. Dep't. of Corr.*, 278 S.W.3d 193, 196 (Mo. banc 2009).

The Highway Patrol contends that the circuit court erred in holding that the Superintendent only has the authority to discipline a member as recommended by the Board or by one of the four enumerated punishments. However, a plain reading of the statute demonstrates that the legislature did not intend for the Superintendent to have the authority to dismiss a member unless dismissal was the punishment recommended by the Board.

11

As the Highway Patrol notes, the statute states that the disciplinary review board will give a recommendation as to "what discipline, if any, ***should*** be imposed."  In *Gamble v. Hoffman*, 695 S.W.2d 503 (Mo. App. W.D. 1985) (superseded by statute), this Court interpreted this phrase, along with the mandate that the superintendent "adjudge," to mean that the board makes a discipline *recommendation* but the superintendent is the party that decides or adjudicates the final discipline to be imposed.  While "should" is the past tense of shall, in this context it is proper to interpret it as an expectation rather than an imperative. *See* Merriam-Webster Unabridged Online Dictionary, https://www.unabridged.merriam-webster.com/unabridged/should (last visited July 10, 2019) (defining "should" as the "past tense of shall" but recognizing one definition as "to express what is probable or expected");[7] *See also Weinstock v. Holden*, 995 S.W.2d 408, 409-10 (Mo. banc 1999) (recognizing that the use of "should" in the judicial recusal rules was "non-mandatory" leaving it to the "sound judgment of those who followed to determine whether recusal was required in a particular case.")  In this case, we agree with such an interpretation of the statute at issue. The board makes a recommendation of disciplinary action to the superintendent but it is ultimately up to that superintendent in her sound judgment to adjudicate and order the discipline, if any, to be imposed.  This, however, does not mean that a superintendent is left with the unfettered discretion to impose any discipline she deems proper.  Section 43.150 provides a finite list of disciplines that may be imposed upon a member.  A member:

shall be subject to dismissal ***as provided or*** to one or more of the following:

---

[7] Merriam-Webster Unabridged online is the successor to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED, last published in print in 2002.

12

(1) Suspension not to exceed thirty days;

(2) Fine;

(3) Reduction in rank; or

(4) Disciplinary transfer at the member's expense;

as the superintendent may adjudge.

(emphasis added). The statute lists for a superintendent the specific disciplines from which she may choose. Under a plain reading of the statute we know that "dismissal as provided" is a distinct category of discipline that is treated differently for two reasons.

First, the use of the phrase "as provided" must be given meaning and effect. "When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment." *Gurley v. Mo. Bd. of Private Investigator Exam'rs*, 361 S.W.3d 406, 413 (Mo. banc 2012) (quoting *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010)). "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo. App. E.D. 2010) (quoting *South Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009)). "The corollary to this rule is that a court should not interpret a statute so as to render some phrases mere surplusage." *Bolt*, 310 S.W.3d at 242 (quoting *Middleton*, 278 S.W.3d at 196). In this case, the natural meaning of the phrase "as provided" is to refer to the provision of a dismissal recommendation by a disciplinary review board.

13

The Highway Patrol argues that the phrase "as provided" refers not to the word "dismissal" which it immediately follows but it refers back to the entirety of the administrative hearing process and "only to the board's finding that the charges are true." This argument is not supported by any rules of grammar or statutory interpretation. It is a strained interpretation which appears to be an attempt to read away the natural effect of the phrase "as provided." To the extent the Highway Patrol does support this argument with citation, it is to case law that simply states that the Superintendent is the party to finally adjudicate discipline which is not an issue Piercy disputes. Instead, the natural reading of the sentence is for the phrase "as provided" to modify and the correct placement for a modifier is next to the word it describes. In this case, "as provided" modifies and limits "dismissal."

The Second reason that supports this interpretation is the legislature chose to set out the phrase "dismissal as provided" as separate and distinct from the specific enumerated list of other disciplinary penalties that may be imposed by a superintendent. The "or" between "dismissal as provided" and the other listed and enumerated forms of discipline is important. "The disjunctive 'or' in its ordinary sense marks an alternative generally corresponding to the term 'either.'" *State v. Graham*, 149 S.W.3d 465, 467 (citing *Council Plaza Redevelopment Corp. v. Duffey*, 439 S.W.2d 526, 532 (Mo. banc 1969)). If the legislature intended a superintendent to have the power to dismiss a member regardless of the board's recommendation then dismissal would simply be listed in the numbered list of available disciplinary actions found in section 43.150. The fact that it is separated with an "or" indicates that the legislature viewed it as separate and distinct from the other forms of

14

discipline that a superintendent may impose unilaterally following a board's finding that the allegations against the member are true. A superintendent may order "dismissal as provided" *or* one or more of the four specified punishments. If the legislature intended for a superintendent to have the ability to dismiss a member absent a board's recommendation it could have so stated. The separation of the "dismissal as provided" by an "or" indicates that it is a separate and distinct category of discipline from the other disciplinary options that are listed. A superintendent may still impose dismissal as one of the available disciplines, but only if it is "provided" by a recommendation of the Board.

The Highway Patrol argues that "[t]he circuit court's reading cannot be correct under *Gamble* because the exact same words were part of the statute in 1985." The case the Highway Patrol refers to is *Gamble v. Hoffman*, 695 S.W.2d 503 (Mo. App. W.D. 1985) (superseded by statute). The Highway Patrol is incorrect both as to the holding and application of *Gamble* and as to the legislative modifications to section 43.150 since the 1978 version of the statute interpreted by this Court in *Gamble*.

In *Gamble*, a trooper and member of the Highway Patrol was alleged to have made unwanted sexual advances towards a female acquaintance including kissing her, rubbing her breasts and trying to get her into her bedroom over her objection. *Id.* at 504. Gamble was married at the time. *Id.* A board was convened and, following a hearing, the board recommended that Gamble be dismissed and the superintendent, without reviewing the transcript of the hearing or the record, ordered Gamble dismissed. *Id.* at 505. The case was appealed and this Court remanded the case for a second hearing and full consideration of the entire record by the superintendent before making a final decision. *Id.* A second

15

hearing was held and the board again recommended dismissal, the superintendent reviewed the entire record including reading the transcript and listening to a recording of the hearing and again ordered Gamble dismissed. *Id.* The circuit court upheld the second dismissal but ordered that Gamble receive back-pay for the time between the first improper dismissal and the subsequent proper dismissal; the case was cross-appealed to this Court. *Id.* at 506. This Court affirmed the decision of the circuit court that "the superintendent of the patrol is the final decision maker in a disciplinary decision" but remanded the case for further proceedings regarding the issue of back pay. *Id.* at 509.

*Gamble*, however, is inapplicable to the integral issue in this case both because section 43.150 has materially changed since the 1978 version relied on by this Court in *Gamble* but also, and most importantly, because *Gamble* does not address the question currently before this Court. In *Gamble* the board recommended dismissal and the superintendent accepted that recommendation and ordered dismissal. *Id.* at 504. The superintendent clearly exercised the authority granted under the statute to order "dismissal as provided" because he ordered dismissal as provided by the board. This in no way answers the question presented in this case: whether a superintendent may order dismissal where the board recommended a lesser punishment. The Highway Patrol's argument that by deciding that a superintendent rather than a board has the final authority to determine discipline *Gamble* requires a finding that a superintendent has unfettered discretion as to all the types of discipline she may impose does not accurately reflect either the discussion, analysis or the facts of *Gamble*. Because in *Gamble* the board recommended dismissal and the superintendent followed that recommendation, the question of the effect of the words

16

"as provided" and whether the superintendent had the authority to order dismissal when the board recommended a lesser punishment was not before or decided by this Court.

*Gamble* is further inapplicable to this case because, despite the Highway Patrol's assertions to the contrary, section 43.150--as it is relevant to this case--has materially changed since the 1978 version which was interpreted in 1985 by this Court in *Gamble*. The Highway Patrol incorrectly sets forth and analyzes the changes in section 43.150 since the 1978 version of the statute analyzed by *Gamble*. The Highway Patrol argues in its brief that--in reference to the discipline section of the statute--"the only change between 1985 and the present is the addition of the semicolon at the end of the numbered list, and that addition confirms that *Gamble* got it right." This is inaccurate. The 1978 version had multiple classes of available punishments "dismissal as provided or to such lighter punishment as suspension not to exceed thirty days, fine, reduction in rank, forfeiture of pay *or* **otherwise** as the superintendent may adjudge." Section 43.150, RSMo. 1978 (emphasis added). The final "or otherwise" was deleted by the legislature from the current version of section 43.150.

Meriam-Webster's Unabridged Online Dictionary defines "otherwise" as "something or anything else." The Merriam-Webster Unabridged Online Dictionary, https://www.unabridged.merriam-webster.com/unabridged/otherwise (last visited July 10, 2019). The "or otherwise" created an additional open ended category of punishment a superintendent could impose. A superintendent was permitted to impose one of specifically mentioned disciplines *or* "anything else" that a superintendent chose to order. Even if *Gamble* involved a situation where the superintendent determined dismissal was

17

appropriate when that punishment was not recommended by the board —which it did not — the statutory amendment, removing the "or otherwise" category of discipline, would render the *Gamble* decision of very limited precedential value. Instead, this amendment to the statute supports the argument that the legislature intended to limit a superintendent to a specific and limited list of possible punishments. The legislature amended the statute to remove the authority of a superintendent to order discipline of "anything else," instead showing its intent to further limit the authority of a superintendent.

The Highway Patrol also contends that the circuit court's interpretation of the statute came from an incorrect interpretation that only applied the "adjudge" to the second set of disciplines available to the Superintendent and not to the "dismissal as provided." This is also an incorrect reading of the circuit court's Judgment. The circuit court correctly found that the Superintendent is the final adjudicator of the discipline. It simply found that the Superintendent did not have the statutory authority to order "dismissal" only "dismissal as provided" and the "as provided" clearly referred to the recommendation by the Board.

In its Reply Brief, the Highway Patrol contends that "[a]t all times, the phrase 'as provided' has referred back to the hearing and a board's finding that the charges were true" citing to *Gamble*. *Gamble* provides no support for this argument and did not in any way interpret the meaning of the phrase "as provided." In fact, the only time the phrase "as provided" is mentioned in *Gamble* is in the quotation of the statute itself. It fundamentally misrepresents the discussion in *Gamble* to suggest that it in any way touched on the question of the application or meaning of the phrase "as provided" as contained in the statute.

18

The Highway Patrol's position is not supported by prior case law or the legislative amendments to the statute. To the extent it suggests otherwise, it incorrectly states the issues presented and analyzed in *Gamble*. As such, we review the question of whether under section 43.150 a superintendent may order the dismissal of a member if dismissal was not recommended by the disciplinary review board as an issue of first impression. Given the rules of statutory construction discussed in greater detail above, we find that the circuit court did not err in finding that the Superintendent does not have the authority to order dismissal if dismissal is not recommended by the Board.

The Highway Patrol's reading of section 43.150 requires reading "as provided" following "dismissal" to be mere surplusage which is contrary to the rules of statutory interpretation. The only way to give meaning to "as provided" is to find that it modifies "dismissal" and a superintendent is only given authority to order "dismissal as provided" meaning dismissal as recommended by the board. The legislature chose not to give a superintendent power to unilaterally dismiss a member. The propriety of this interpretation was made clear by the legislatures decision to remove "or otherwise" as an available discipline for a superintendent, leaving only those punishments specifically enumerated.

As such, the circuit court did not err in finding that the Superintendent unlawfully imposed dismissal and remanding the case to the Superintendent for imposition of one or more of the four listed disciplinary actions available to the Superintendent under section 43.150.

## Conclusion

The Superintendent lacked the statutory authority to order Piercy dismissed where dismissal was not recommended by the Board and the circuit court did not err in so finding. For the reasons stated above, we affirm the circuit court's Judgment remanding the case to the agency to allow the Superintendent to determine the proper discipline to impose consistent with the Judgment.

_____
Gary D. Witt, Judge

All concur

20